**BLUMENTHAL, NORDREHAUG & BHOWMIK**
  Norman B. Blumenthal (State Bar #068687)
  Kyle R. Nordrehaug (State Bar #205975)
  Aparajit Bhowmik (State Bar #248066)
2255 Calle Clara
La Jolla, CA 92037
Telephone: (858)551-1223
Facsimile: (858) 551-1232
Firm Website: http://www.bamlawca.com

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRANK GALLARDO, an individual, on behalf of himself, and on behalf of all persons similarly situated,<br><br>    Plaintiff,<br><br>v.<br><br>AIG DOMESTIC CLAIMS, INC., a Delaware Corporation; CHARTIS CLAIMS, INC., a Delaware Corporation; and DOES 1 to 10, Inclusive,<br><br>    Defendants. | Case No. **SACV-12-1107-CJC (AN)**<br><br><br>**PLAINTIFF'S NOTICE OF APPEAL TO THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT**<br><br><br>Judge:        Hon. Cormac J. Carney<br>Court No.:   9B<br><br><br>Action Filed:        June 5, 2012 |

Plaintiff Frank Gallardo hereby appeals to the United States Court of Appeals for the Ninth Circuit from the final judgment entered in this action by the District Court for the Central District of California on July 24, 2013 [Doc. No. 41] and all interlocutory orders that gave rise to that judgment, including but not limited to the Order dated October 17, 2012 [Doc. No. 21].  A true and correct copy of the final order granting judgment in favor of Defendants and dismissing the entire action on the merits entered on July 24, 2013 at Docket No. 41 is attached hereto as Exhibit #1.

Plaintiff/Appellant are not aware of any related cases that are currently pending in this Court.   Attached hereto as Exhibit #2 is a Representation Statement for Plaintiff/Appellant Frank Gallardo.

Dated: August 5, 2013                    BLUMENTHAL, NORDREHAUG & BHOWMIK


By:   /s/ Norman B. Blumenthal
Norman B. Blumenthal, Esq.
2255 Calle Clara
La Jolla, CA 92037
(858) 551-1223
Fax: (858) 551-1232
Email: Norm@bamlawca.com

Attorney for Plaintiff / Appellant

1

2 **CERTIFICATE OF SERVICE [F.R.C.P. §5]**

3      I am a citizen of the United States and a resident of the State of California. I

4 am employed in the County of San Diego, State of California. I am over the age of

5 18 and not a party to the within action. My business address is 2255 Calle Clara, La

6 Jolla, California 92037. On August 5, 2013, I served the document(s) described as

7 below in the manner set forth below:

8

9      1.    PLAINTIFF'S NOTICE OF APPEAL TO THE UNITED STATES

10           COURT OF APPEALS FOR THE NINTH CIRCUIT

11

12 _XX_      (BY ELECTRONIC SERVICE): I caused the listed documents to be electronically filed through the CM/ECF system at the United States District Court for the Central District of California which generates a

13 Notice of Electronic Filing to all parties and constitutes service of the electronically filed documents on all parties for purposes of the Federal

14 Rules of Civil Procedure.

15 **_XX_**      (Federal): I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made, and that the

16 foregoing is true and correct under penalty of perjury.

17      I declare under penalty of perjury under the laws of the State of California that

18 the foregoing is true and correct. Executed on August 5, 2013 at San Diego,

19 California.

20

21                                   */s/ Norman B. Blumenthal*
                                   Norman B. Blumenthal

22

23

24

25

26

27

28

**<u>EXHIBIT #1</u>**

# JS-6

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## SOUTHERN DIVISION

| | |
|---|---|
| FRANK GALLARDO, an individual on behalf of himself, and on behalf of all persons similarly situated,<br><br>        Plaintiff,<br><br>    vs.<br><br>AIG DOMESTIC CLAIMS, INC., a Delaware Corporation; CHARTIS CLAIMS, INC., a Delaware Corporation; and DOES 1 to 10, Inclusive<br><br>        Defendants. | Case No.: SACV 12-01107-CJC(ANx)<br><br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT** |

## INTRODUCTION

Plaintiff Frank Gallardo ("Plaintiff") filed this purported class action in Orange County Superior Court on June 1, 2012 against AIG Domestic Claims, Inc. and Chartis Claims, Inc. (together, "Defendant").[1]  Defendant removed the case to this Court on July

---

[1]  Defendant clarifies that AIG Domestic Claims, Inc. and Chartis Claims, Inc. are a single entity.  AIG Domestic Claims, Inc. changed its corporate name to Chartis Claims, Inc. on or about July 27, 2009. (Dkt. No. 1 [Notice of Removal] at 1.)

6, 2013, (Notice of Removal), and Plaintiff filed the operative First Amended Complaint ("FAC") on August 30, 2012, (Dkt. No. 16 ["FAC"]).  Plaintiff, who was employed by Defendant as a "Hearing Representative" between 2007 and 2011, brings five causes of action:  (1) unfair competition in violation of California Business and Professions Code section 17200, *et seq.*; (2) failure to pay overtime compensation in violation of California Labor Code ("Labor Code") sections 510, 515, 1194, and 1198; (3) failure to provide accurate itemized wage statements in violation of Labor Code section 226; (4) failure to provide wages when due in violation of Labor Code section 203; and, (5) a claim under Labor Code section 2698, the Labor Code Private Attorneys General Act.  Plaintiff brings the first cause of action on behalf of a class of Defendant's current and former employees in California and the second, third, and fourth causes of action on behalf of a subclass.[2] (FAC ¶¶ 27; 39.)

Presently before the Court is Defendant's motion for summary judgment, or in the alternative, partial summary judgment.  (Dkt. No. 32.)  Defendant argues: (1) that Plaintiff's entire complaint should be dismissed because he was appropriately classified as exempt from California overtime requirements under the administrative and/or learned professional exemptions; (2) that Plaintiff's third cause of action fails because Plaintiff cannot show that any inaccuracies were knowing and intentional and because Defendant had a good-faith belief that he was properly classified as exempt; and, (3) that Plaintiff's fourth cause of action fails because Defendant had a good-faith belief that he was

---

[2]  The "California Class" is defined as "all individuals who are or previously were employed for DEFENDANT in California as Hearing Representatives and were classified as exempt from overtime wages (the 'CALIFORNIA CLASS') at any time during the period beginning four (4) years prior to the filing of this Complaint and ending on the date as determined by the Court (the 'CALIFORNIA CLASS PERIOD')."  (FAC ¶ 9, 27.)  The "California Labor Sub-class" is defined as "all members of the CALIFORNIA CLASS who are or previously were employed by DEFENDANT in California and who were classified as exempt from overtime wages (the 'CALIFORNIA LABOR SUB-CLASS') during the period three (3) years prior to the filing of the Complaint and ending on the date as determined by the Court (the 'CALIFORNIA LABOR SUB-CLASS PERIOD') pursuant to Fed. R. Civ. Proc. 23(b)(2) and/or (3)."  (FAC ¶ 39.)

properly classified.  (Dkt. No. 32 [Def.'s Mot.].)  Because Plaintiff is an administrative employee not entitled to overtime pay under California's "administrative exemption," Defendant's motion is **GRANTED**.[3]

**FACTUAL BACKGROUND**

Defendant is a subsidiary of American International Group ("AIG").  (Decl. of Kristian Nielsen in Supp. of Def.'s Mot. for Summ. J. ["Nielsen Decl."] ¶¶ 1–2.) Defendant administers workers' compensation and casualty claims for insurance policies sold by different carriers that fall under the AIG umbrella.  (Def.'s Reply to Pl.'s Statement of Genuine Issues in Opp'n to Mot. for Summ. J. ["Reply Statement"] at 64, ¶ 62.)  It is responsible for determining the validity and value of claims made against policyholders' workers' compensation policies.  (Nielsen Decl. ¶ 3.)  When disagreements arise over Defendant's determinations, proceedings before the Workers' Compensation Appeals Board ("WCAB") are sometimes required.  (Nielsen Decl. ¶ 4.) In WCAB proceedings, policyholders can elect to be represented by a licensed attorney or, at a lower cost, a "Hearing Representative" employed by Defendant.  (Nielsen Decl. ¶ 5; Reply Statement at 2, ¶ 2; 7, ¶ 11.)

Hearing Representatives are non-managerial employees who are permitted to conduct depositions, appear in court, sign and file pleadings and legal documents, and represent parties in trials before the WCAB.  (Reply Statement at 2–3, ¶ 3; 103, ¶ 89.) Defendant's job description for the Hearing Representative position states that the purpose of the job is, in part, to "independently analyze, evaluate and prepare cases for [WCAB] hearings."  (Decl. of Aparajit Bhowmik in Supp. of Pl.'s Opp'n to Def.'s Mot.

---

[3]  Because Plaintiff falls under the administrative exemption as a matter of law and summary judgment is warranted on that basis alone, the Court need not address whether the learned professional exemption also applies or consider Defendant's additional arguments in support of partial summary judgment.

for Summ. J. ["Bhowmik Decl."] Exh. 5 ["Job Description"].)  Under a heading entitled "Discretion," the description states that a Hearing Representative has:

> Authority to make significant independent decisions based on independent judgment on matters relating to assigned caseload, interacting with attorneys, judges and when representing the Company in a legal forum.  Has the authority to make legal analyses and recommendations regarding the resolution of a case.

(Job Description.)  The position requires a bachelor's degree or equivalent experience in addition to preferred licensing certifications, and requires three years of experience handling workers' compensation cases.  (Job Description.)  It also requires basic knowledge of workers' compensation rules, regulations, and case law; proficient oral and written communication skills; proficient problem solving, time management, and organization skills; and "[a]dvanced technical knowledge of law, regulations, case rulings and medical and legal terminology."  (Job Description.)  The supervision level of the position is "moderate," which means: "Incumbents have freedom to act once objectives are set and have the latitude to select methods or approaches based on established policies, procedures and precedents."  (Job Description.)  Hearing Representatives are supervised by a Litigation Manager who reviews claims, assigns claims to Hearing Representatives and Senior Hearing Representatives, schedules and maintains a master calendar of appearances, coordinates the training of Hearing Representatives, and provides feedback during annual performance reviews.  (Decl. of Lori Noriega in Supp. of Def.'s Mot. for Summ. J. ["Noriega Decl."] ¶¶ 3, 4, 9, 10.)  During the time period at issue in this case, Hearing Representatives were classified as exempt from receiving overtime wages.  (Reply Statement at 65, ¶ 67.)

///

Plaintiff began working for Defendant as a Hearing Representative on August 13, 2007 and worked in that capacity until his termination on November 29, 2011.  (Decl. of Ryan D. Derry in Supp. of Def.'s Mot. for Summ. J. ["Derry Decl."] Exh. A ["Gallardo Dep."] 10:10–11:04[4]; Reply Statement at 3, ¶ 4.)  Prior to receiving that position through a promotion, Plaintiff worked for Defendant as a "Claims Specialist III" from May 17, 2004 through June 4, 2007, and as a "Senior Claims Representative" from June 4, 2007 through August 13, 2007.  (Bhowmik Decl. Exh. 8 [Def.'s Responses to Pl.'s Interrogatories] #1.)  Plaintiff has an Associate of Arts degree in paralegal studies from Coastline Community College.  (Gallardo Dep. 19:22–20:4; Reply Statement at 53–54, ¶ 51.)  Courses required for that degree include civil litigation, legal research, and legal analysis and briefing.  (Gallardo Dep. 20:9–14; Reply Statement at 53–54, ¶ 51.)  He also completed three years of coursework towards a degree in biological sciences, (Reply Statement at 53, ¶ 51), and was certified to administer workers' compensation claims because he had passed the Self-Insured State Competency Exam Workers' Compensation, (Decl. of Elena R. Baca in Supp. of Def.'s Mot. for Summ. J. ["Baca Decl."] Exh. A [Gallardo Dep. III] 21:17–25).[5]  At the time Plaintiff became a Hearing Representative, he had about ten years of experience in the workers' compensation field.  (Gallardo Dep. 26:13–16.; Reply Statement at 54, ¶53.)  This experience, as well as training he had received, gave him some background, knowledge, and skill to perform the Hearing Representative position.  (Gallardo Dep. 26:17–25; Reply Statement at 54, ¶ 53.)  During his tenure as a Hearing Representative, Plaintiff was paid an annual salary of no less than $74,000.  (Gallardo Dep. 11:19–23; Reply Statement at 6, ¶ 8.)

///

///

---

[4]  Deposition page numbers refer to the internal page numbers of the deposition transcripts themselves, rather than the exhibit page numbers assigned by the parties.

[5]  "Gallardo Dep. III" and "Nielsen Decl. III" refer to the deposition excerpts attached to the Baca Declaration submitted with Defendant's reply, and not to a separate deposition session.

As a Hearing Representative, Plaintiff's job responsibilities generally involved analyzing, evaluating, and preparing cases for WCAB hearings and depositions, (Reply Statement at 6, ¶ 9), identifying relevant legal issues and pursuing favorable resolutions of his cases, (Reply Statement at 6–7,¶ 10), appearing at WCAB hearings on behalf of Defendant and its policyholder customers, (Reply Statement at 7, ¶ 11), and coordinating with the involved parties to develop a low-cost litigation plan, (Reply Statement at 12, ¶ 14).[6]  He was also required to stay up-to-date on workers' compensation law, (Reply Statement at 34, ¶ 36; 54, ¶ 54), which he accomplished by attending training sessions, reviewing communications from attorney panels, and interacting with other hearing officers, opposing counsel, and judges.  (Reply Statement at 55, ¶55.)  Plaintiff typically spent his time on Monday through Thursday making appearances at the WCAB and conducting depositions at various locations in the Southern California area.  (Gallardo

---

[6]  Plaintiff described his work as Defendant's Hearing Representative in a resume he prepared immediately upon his termination and which he has sent to prospective employers.  (Gallardo Dep. 17:9–19.)  Plaintiff attests that the statements in the resume are truthful and accurate.  (Gallardo Dep. 17:19–21.)  The resume states, in part:

As a Hearing Representative for Chartis Claims Services the critical components and key job functions included but not limited [sic] to:

- Analyze each case assignment for all legal issues and provide analysis with recommendation to claims examiner.
- Appear at status conferences, mandatory settlement conferences, trial, and arbitration hearings.
- Provide recommendations to claims examiner for follow up or necessary claims handling.
- Write reports on hearings, depositions, and conferences; process settlement documents on cases settled in a timely manner.  Prepare court pleadings.
- Conduct depositions of injured workers, physicians and witnesses.
- Responsible for resolution of assigned caseload.
- Knowledge of State W.C. Systems principles and judicial protocol.
- Settle cases within authority provided in accordance company guidelines [sic].
- Provide technical assistance for claims staff on legal issues.
- Numerous appearances and familiarity with Southern California WCAB locations in San Diego, San Bernardino, Riverside, Pomona, Anaheim, Santa Ana, Long Beach, Los Angeles, Marina Del Rey and Van Nuys.

(Derry Decl. Exh. B-1 at 131.)

Dep. 30:7–13.)   Although Plaintiff worked from home or other locations most of the week, he worked from Defendant's office in Costa Mesa, California "usually once a week on Fridays" for about two hours to pick up and deliver files, meet with claims adjusters, and periodically participate in trainings.  (Gallardo Dep. 27:1–28:15.)  Plaintiff spent approximately 70% of his working time appearing at status conferences, mandatory settlement conferences, trials, and arbitration hearings, and providing recommendations to claims examiners for follow up or necessary claims handling.  (Reply Statement at 13, ¶ 18.)

        While Plaintiff performed a variety of tasks, he spent the majority of his time making appearances at the WCAB and conducting depositions.  (Reply Statement at 12, ¶ 15.)  Each month, Plaintiff participated in 20 to 25 WCAB hearings, (Reply Statement at 12–13, ¶ 17 ), including lien conferences, conference calendar hearings, mandatory settlement conferences, expedited hearings, priority conferences, trials, and lien trials, (Reply Statement at 66, ¶ 72).  Plaintiff was involved in proceedings related to the case-in-chief concerning an employee's injury, as well as in separate lien proceedings related to third party claims for compensation.  (Gallardo Dep. 55:4–56:11.)  In order to prepare for a hearing, Plaintiff would review the case file.  (Gallardo Dep. 34:16–23.)  Plaintiff considered what information he needed to review in order to prepare for the hearing, determined what additional information was needed, went about collecting the information, and analyzed what he wanted to do at the hearing.  (Gallardo Dep. 34:15–36:6; Reply Statement at 27, ¶ 32.)  For example, if Plaintiff was preparing for a mandatory settlement conference, he would think about which witnesses to disclose, which evidence to list, and the steps he needed to take to prepare for the conference.  (Gallardo Dep. 35:25–36:6.)

///

///

While Plaintiff "was under the [claims] adjuster's control as far as what [he] could and couldn't do" at hearings, he decided how to present issues to the extent there was a dispute with the opposing party, (Gallardo Dep. 196:6–10), used his medical and legal knowledge to inform the issues, (Gallardo Dep. 196:1–5), and made decisions regarding how to respond to questions posed by a judge, (Gallardo Dep. 194:12–17). Based on instructions from a claims adjuster, Plaintiff also completed legal documents including pre-trial statements, appearance sheets, stipulations, awards, releases and settlement documents. (Gallardo Dep. 97:20-23; 151:24-152:11; Reply Statement at 27–28, ¶ 33.) If the proceedings involved settlement discussions, Plaintiff communicated with opposing counsel in order to obtain settlement demands and respond to them if he had the authority to do so. (Gallardo Dep. 37:23–38:6.) If he had the authority to settle the case, Plaintiff decided whether or not to make an offer or tried to negotiate a resolution within the approved parameters. (Gallardo Dep. 38:13–17.) If a case did not settle and was instead set for trial, Plaintiff revisited his analysis and reconsidered the extent of the injury and the parties' positions. (Reply Statement at 47–48, ¶46.) He also made recommendations concerning next steps in the case, such as whether further investigation was needed or whether additional settlement authority was warranted. (Reply Statement at 48, ¶ 47.) Following a hearing, Plaintiff was required to send a "case disposition" to the litigation manager and claims adjuster for review within 24 hours of the hearing date, (Reply Statement at 106, ¶92), and to prepare a summary for every appearance that he performed, (Reply Statement at 122, ¶113).

Plaintiff also attended about eight depositions per month on average as a Hearing Representative. (Gallardo Dep. 99:16–23.) In advance of each deposition, Plaintiff reviewed the case file. (Gallardo Dep. 36:7–12.) He studied all of the documents in the file, including medical reports and investigation notes and findings, and determined what type of injury was claimed, what information Defendant already possessed, and what admissions of facts he might want to get from the injured person or witness related to the

claim. (Gallardo Dep. 36:17–37:6; Reply Statement at 19, ¶ 23.) While Plaintiff generally adhered to a deposition outline, he tailored his outline to each individual case and would not "ask somebody about their knee if their elbow is injured." (Reply Statement at 19–20, ¶ 24.) Based on his outline and his training, Plaintiff formulated a deposition plan considering the injury at issue and the claimant's veracity. (Reply Statement at 20, ¶25.) At depositions, Plaintiff's goal was to elicit admissions from the claimant to help dispose of the claim. (Gallardo Dep. 92:10–16; 157:20–158:3.) He paid attention to information that could be used for impeachment, (Gallardo Dep. 92:10–16; 196:11–25), and responded when opposing counsel raised an objection or legal issue, (Gallardo Dep. 38:18–39:6; Reply Statement at 20, ¶ 26).

Following a deposition, Plaintiff prepared a summary report based on a preformatted template which provided his impressions of the deponent, including his or her credibility as a witness, as well as the strengths, weaknesses, and value of the case. (Reply Statement at 20–23, ¶ 27; Derry Decl. Exh. B-2 [sample summary reports].) This report, which was submitted to the litigation manager and claims adjuster, recommended additional tasks or steps Plaintiff believed Defendant should take, such as surveilling the witness, subpoenaing records, or launching a fraud investigation. (Gallardo Dep. 158:8-12; 161:17–164:4; sample summary reports.) Based upon his review of the evidence and deposition testimony, Plaintiff also projected the claimant's level of impairment based on his experience and "AMA guidelines." (Reply Statement at 24–25, ¶ 30.) It is undisputed that Plaintiff made decisions regarding which documents to present and which arguments to make. (Gallardo Dep. 39:1–12.)

While Plaintiff acted with some autonomy as described above, it is also undisputed that Hearing Representatives were only able to act within the confines of the authority granted to them by a claims adjuster or manager. Plaintiff describes his position as that of a middle-man. (*See* Bhowmik Decl. Exh. 1 ["Gallardo Dep. II"] 191:12–17 ("Well,

for the most part we're acting as an intermediary between the adjuster and the opposing party.  Anything that we would recommend would be based on our training and the company policy and procedure and such a course depending on what the facts were of the case."); 57:17–25 (At status conferences, Plaintiff's role was to "find out what the issues are and why the conference is being held to – to get their side of the story and relay that to the claims adjuster.").)[7]  He could not settle a case without authority from a claims adjuster or a manager.  (*See* Gallardo Dep. II 131: 6–8 ("It's the adjuster who gives me the settlement authority and if I don't get it from them, I can do nothing."); Bhowmik Decl. Exh. 2 ["Nielsen Dep. II"] 41:11–17.)  He could not omit witnesses or evidence identified by the claims adjuster from the pre-trial statement.  (Nielsen Dep. II 71:25–72:17.)  He did not have the authority to bind Defendant to accept or reject a claim.  (Nielsen Dep. II 59:4–10.)  It was a claims adjuster, not a Hearing Representative, who prepared a "plan of action" for WCAB hearings.  (Reply Statement at 66, ¶ 73; Nielsen Dep. II 82:14–83:12.)  Further, while Plaintiff made recommendations to claims adjusters, he could not independently make final decisions on a variety of matters.  For example, Hearing Representatives made recommendations to claims adjusters about whether a claim should be investigated for fraud, (Nielsen Dep. II 229:23–230:11), whether a subpoena should be served, (Nielsen Dep. II 234:3–7), and whether to object to medical treatment, (Nielsen Dep. II 235:15–237:16), but could not act on those recommendations without authority from a claims adjuster.

Notwithstanding that Plaintiff's work largely depended on authority obtained from claims adjusters, "[i]t's not as if the hearing rep shows up and, in essence, he's a robot that only does what an adjust – when [sic] an adjuster puts in a claim file.  That's not what happens.  The adjuster is a continuation process . . . there is a very dynamic circumstance at the [WCAB] just like it would be at a court where arguments are raised,

---

[7]  "Gallardo Dep. II" and "Nielsen Dep. II" refer to the deposition excerpts attached to the Bhowmik Declaration submitted in opposition to Defendant's motion.

1   new evidence is submitted, different individuals are incorporated into it . . . and

2   information that's found within a case that an adjuster never did – didn't identify or

3   notice." (Baca Decl. Exh. B ["Nielsen Dep. III"] 159: 7–19.)  Moreover, if a claims

4   adjuster disagreed with a Hearing Representative's recommendation, the Hearing

5   Representative could raise the issue with a manager.  (Nielsen Dep. II 234:12–19.)  It

6   appears that generally, Plaintiff's recommendations were accepted.  (Gallardo Dep.

7   203:6–22.)

8

9        Defendant has provided evidence that Plaintiff's work was important to its

10  operations:

11

12       Gallardo's work was of substantial importance to the operations of

13       [Defendant] and its policyholders.  Some of the matters Gallardo handled

14       included cases brought on behalf of claimants who had suffered workplace

15       fatalities; other cases involved seriously disabling [sic] injuries.  In many

16       instances hundreds of thousands of dollars was at issue [sic].  In all matters,

17       Gallardo acted as [Defendant] and policyholders' representative before the

18       WCAB.

19

20  (Noriega Decl. in Supp. of Def.'s Mot. for Summ. J. ["Noriega Decl."] ¶ 6.)[8]

21  _____

22  [8]  In opposition to Defendant's motion, Plaintiff submitted the expert witness declaration of David E.
     Pilcher.  Mr. Pilcher opines on the role of a Hearing Representative, summarizes and comments on some

23  of the evidence, and concludes: "Although hearing representatives are unique to the California workers
     compensation process, their job duties closely mirror that of paralegals such that the same logic applies

24  to their roles.  On a day to day basis they are essentially applying a well-established set of techniques,
     skills and protocols to the tasks they are assigned in a routine and established manner rather than

25  effectuating any significant or substantive judgment or discretion and therefore more [sic] correctly
     classed as non-exempt employees."  (Decl. of David E. Pilcher at 9.)  The Court excludes Mr. Pilcher's

26  declaration under Federal Rule of Evidence 702 because his knowledge does not "help the trier of fact to
     understand the evidence or to determine a fact in issue."  Fed. R. Evid. 702.  The evidence in this case is

27  not particularly complex and the Court is able to understand Plaintiff's job duties and how they relate to
     overtime exemptions without the assistance of an expert.  Further, Mr. Pilcher inappropriately gives a

28  legal conclusion in stating that Hearing Representatives should be classified as non-exempt employees.

**LEGAL STANDARD**

The Court may grant summary judgment on "each claim or defense — or the part of each claim or defense — on which summary judgment is sought." Fed. R. Civ. P. 56(a). Summary judgment is proper where the pleadings, the discovery and disclosure materials on file, and any affidavits show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.*; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 325. A factual issue is "genuine" when there is sufficient evidence such that a reasonable trier of fact could resolve the issue in the nonmovant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" when its resolution might affect the outcome of the suit under the governing law, and is determined by looking to the substantive law. *Id.* "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 249.

Where the movant will bear the burden of proof on an issue at trial, the movant "must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). In contrast, where the nonmovant will have the burden of proof on an issue at trial, the moving party may discharge its burden of production by either (1) negating an essential element of the opposing party's claim or defense, *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–60 (1970), or (2) showing that there is an absence of evidence to support the nonmoving party's case. *Celotex Corp.*, 477 U.S. at 325. Once this burden is met, the party resisting the motion must set forth, by affidavit, or as otherwise provided under

---

*See Hangarter v. Provident Life and Acc. Ins. Co.*, 373 F.3d 998, 1016 (9th Cir. 2004) (while Federal Rule of Evidence 704 permits expert testimony embracing an ultimate issue, an expert witness cannot give an opinion regarding a legal conclusion, i.e., an opinion on the ultimate issue of law).

Rule 56, "specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. A party opposing summary judgment must support its assertion that a material fact is genuinely disputed by (i) citing to materials in the record, (ii) showing the moving party's materials are inadequate to establish an absence of genuine dispute, or (iii) showing that the moving party lacks admissible evidence to support its factual position. Fed. R. Civ. P. 56(c)(1)(A)–(B). But the opposing party must show more than the "mere existence of a scintilla of evidence." *Anderson*, 477 U.S. at 252. In considering a motion for summary judgment, the court must examine all the evidence in the light most favorable to the nonmoving party, and draw all justifiable inferences in its favor. *Id.*; *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630–31 (9th Cir. 1987). The court does not make credibility determinations, nor does it weigh conflicting evidence. *Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 456 (1992). But uncorroborated and self-serving testimony in affidavits and moving papers is insufficient to raise triable issues of fact and defeat summary judgment. *See Kennedy v. Applause, Inc.*, 90 F.3d 1477, 1481 (9th Cir. 1996); *Thornhill Pub. Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

**ANALYSIS**

Defendant's primary argument is that all of Plaintiff's claims fail because Plaintiff was properly classified as an employee exempt from overtime requirements under California's "administrative" exemption. Whether an employee is exempt from overtime coverage is a mixed question of fact and law. *Ramirez v. Yosemite Water Co.*, 20 Cal. 4th 785, 794 (1999). "The issue of what Plaintiff did as an employee for Defendant[] is a question of fact, while the precise scope of the exemptions is a question of law. Thus, if there is no dispute as to Plaintiff's job duties, this Court can hold as a matter of law that Plaintiff either does or does not fall into the . . . administrative exemption[]." *Rieve v.*

*Coventry Health Care, Inc.*, 870 F. Supp. 2d 856, 866 (C.D. Cal. 2012).  Exemptions from mandatory overtime provisions are narrowly construed, and the employer bears the burden of proving the employee's exemption.  *Ramirez*, 20 Cal. 4th at 794–95.

Labor Code section 510 mandates that employees be paid overtime for work in excess of eight hours per day or in excess of forty hours in one week.  However, certain exempt employees are not entitled to premium pay for overtime as provided in section 510.  Labor Code section 515 empowers the Industrial Welfare Commission ("IWC") to establish exemptions for "executive, administrative, and professional employees, if the employee is primarily engaged in the duties that meet the test of the exemption, customarily and regularly exercises discretion and independent judgment in performing those duties, and earns a monthly salary equivalent to no less than two times the state minimum wage for full-time employment."  An employer must establish five elements in order to exempt an employee under the administrative exemption:

1.  The employee performs work "directly related to management policies or general business operations" of either the employer or the employer's clients;
2.  The employee "customarily and regularly exercises discretion and independent judgment";
3.  The employee works "under only general supervision" while either: (1) performing work along specialized or technical lines requiring special training, experience, or knowledge, or (2) executing special assignments and tasks;
4.  The employee is "primarily engaged" in exempt work meeting the above requirements; and
5.  The employee meets a minimum salary requirement.

*Campbell v. PricewaterhouseCoopers, LLP*, 642 F.3d 820, 830–31 (9th Cir. 2011); 8 C.C.R. § 11040(1)(A)(2) (codified version of IWC Wage Order 4-2001); *see also In re United Parcel Serv. Wage & Hour Cases*, 190 Cal. App. 4th 1001, 1028 (2010) (administrative exemption test is conjunctive and requires employer to "affirmatively establish the applicability of all the elements in order to be entitled to judgment"). The exemption extends to "all work that is directly and closely related to exempt work and work which is properly viewed as a means for carrying out exempt functions." 8 C.C.R. § 11040(1)(A)(2)(f). Here, Defendant has established that all five requirements are met and that it is entitled to judgment as a matter of law.[9]

**1. Plaintiff performed office or non-manual work directly related to the management policies or general business operations of Defendant or its customers.**

The first requirement of the exemption is that the work performed by the employee be "directly related" to management policies or general business operations. "Work qualifies as 'directly related' if it satisfies two components. First, it must be *qualitatively* administrative. Second, *quantitatively*, it must be of substantial importance to the management or operations of the business. Both components must be satisfied before work can be considered 'directly related' to management policies or general business operations in order to meet the test of the exemption." *Harris*, 53 Cal. 4th at 181–82 (emphasis in original). Qualitatively, "administrative operations include work done by 'white collar' employees engaged in servicing a business. Such servicing may include, as potentially relevant here, advising management, planning, negotiating, and representing the company." *Id.* at 182. The quantitative aspect of this standard requires that the work

---

[9]  While Plaintiff purports to dispute much of the factual basis underlying Defendant's motion, in actuality the disputes do not concern the facts themselves but rather the legal significance of those facts and the factual context in which they should be analyzed.

performed by the employee be "of substantial importance to the management or operation of the business," and includes persons "whose work affects business operations to a substantial degree, even though their assignments are tasks related to the operation of a particular segment of the business." 29 C.F.R. § 541.205(c) (2000).[10]

Here, the work performed by Plaintiff was qualitatively administrative.  Plaintiff "serviced" Defendant and its policyholders by representing the company in WCAB proceedings, conducting depositions of witnesses, physicians, and injured workers, effectuating settlements within the authority he was granted, advising Defendant which steps to take in a particular case, and providing recommendations to claims adjusters. Courts have regularly held that claims adjusters who perform related tasks in evaluating claims and representing a defendant employer in negotiating and settling claims are engaged in "servicing" the business and fall within the administrative exemption.  *See Cheatham v. Allstate Ins. Co.*, 465 F.3d 578, 585–86 (5th Cir. 2006) (insurance company adjuster's tasks advising management, representing employer, and negotiating on employer's behalf were administrative in nature under the Fair Labor Standards Act ("FLSA")); *Bucklin v. Am. Zurich Ins. Co.*, No. 2:11-CV-05519-SVW-MRW, 2013 U.S. Dist. LEXIS 86342, at *20 (C.D. Cal. June 19, 2013) (claims adjuster's work planning the processing of claims, representing employer in investigating claims, determining coverage, and setting reserves, managing litigation and negotiating settlements, and making recommendations to supervisors was directly related to the administrative operations of the employer's business); *Palacio v. Progressive Ins. Co.*, 244 F. Supp. 2d

---

[10]  Wage Order 4-2001, 8 C.C.R. § 11040, incorporates certain then-existing federal regulations: "The activities constituting exempt work and non-exempt work shall be construed in the same manner as such terms are construed in the following regulations under the Fair Labor Standards Act effective as of the date of this order: 29 C.F.R. Sections 541.201-205, 541.207-208, 541.210, and 541.215."  8 C.C.R. § 11040(1)(A)(2)(f).  The California Supreme Court has specifically stated: "[J]ust as the statute is understood in light of the wage order, the wage order is construed in light of the incorporated federal regulations."  *Harris*, 53 Cal. 4th 170, 179 (2011).

1040, 1045–46 (C.D. Cal. 2002) (claims agent's duties were "directly related" for purposes of FLSA administrative exception where "[s]he assessed liability, weighed evidence, determined credibility, reviewed insurance policies, negotiated with attorneys and claimants, and made recommendations to management based on skills, knowledge and training acquired over the course of several years").  While Plaintiff's position was subordinate to that of a claims adjuster, he undertook similarly administrative tasks including representing his employer, negotiating settlements, and making recommendations.

Plaintiff relies on *Rieve v. Coventry Healthcare, Inc.*, in which a court in this district found that a medical field case manager trained as a nurse who spent more than 50% of her time "communicating with doctors, patients and claims adjustors in order to understand the patients' conditions, determine what medical care was being provided and evaluate whether it was appropriate" did not meet the qualitative requirement of the "directly related" test.  870 F. Supp. 2d 856, 860 (C.D. Cal. 2012).  The court noted that while the plaintiff could make recommendations and advise patients, "ultimately the decisions about patient care are made by the physician and the claims adjustors."  *Id.* at 874.  The *Rieve* court further rejected the defendant's assertion that the plaintiff "represented" the company simply because she "took pride in her work and attempted to provide her employer with a positive public image."  *Id.* at 873.  This case is distinguishable.  Plaintiff did not "represent" Defendant in the same way that any other employee, such as a cashier or bank teller, represents his or her employer by interacting with the public.  Rather, Plaintiff acted on behalf of Defendant and its policyholders in a legal setting representing and defending their interests.  Plaintiff was able to take action on behalf of Defendant and exercise decision-making skills in the course of planning and conducting depositions and appearing before the WCAB.  This is unlike the *Rieve* plaintiff, who merely acted as the "eyes and ears" of the claims adjusters and whose role was "documenting the costs of care, preparing reports regarding a plan of care, and

identifying and implementing medical services." *Id.* at 860.  When given the authority to do so, Plaintiff bound Defendant by resolving cases through settlement.  (Gallardo Dep. 85:6–12.)  In contrast, there was no evidence in *Rieve* that the plaintiff could "take affirmative action that would bind anyone other than herself." *Id.* at 874–75.  Accordingly, Plaintiff "services" Defendant's business in a way that the plaintiff in *Rieve* did not.

Plaintiff argues that there is a triable issue as to whether the "directly related" requirement is met because his duties were "task-based," or limited only to assignments he received to appear at hearings on a day-to-day basis.  (Dkt. No. 36 ["Pl.'s Opp'n"] at 18.)  He relies on *Bothell v. Phase Metrics*, 299 F.3d 1120 (9th Cir. 2002), in which the Ninth Circuit stated that the "directly related" requirement is met if the employee engages in "running the business itself or determining its overall course or policies" and not just in carrying out the business' affairs on a day-to-day basis. *Id.* at 1125.  But as Defendant correctly points out, *Bothell* derived that principle from *Bratt v. County of Los Angeles*, 912 F.2d 1066, 1070 (9th Cir. 1990).  The *Harris* court explicitly stated that in light of more recent Ninth Circuit authority, "*Bratt's* persuasiveness is in doubt." *Harris*, 53 Cal. 4th at 189.  The *Harris* court instead relied on and quoted *Miller v. Farmers Ins. Exch*, 481 F.3d 1119, 1124 (9th Cir. 2007), which "held that under more recent applicable federal regulations, claims adjusters are exempt from the Fair Labor Standards Act's overtime requirements 'if they perform activities such as interviewing witnesses, making recommendations regarding coverage and value of claims, determining fault and negotiating settlements.' " *Harris*, 53 Cal. 4th at 189 (quoting *Miller*, 481 F.3d at 1124).[11]  In light of *Harris'* disapproval of *Bratt*, at least one other court in this district

---

[11]  Although the *Miller* court and others have relied on a newer version of the regulations concerning the FLSA administrative exemption, "these cases are instructive because the regulations enacted by the United States Department of Labor after Wage Order 4-2001 were intended to be consistent with the old regulations." *Harris*, 53 Cal. 4th at 964 n.8; *see also Soderstedt v. CBIZ Southern California, LLC*, 197 Cal. App. 4th 133, 150 (2011) (holding that "the trial court did not err by relying on the revised federal regulations in interpreting the administrative exemption in Wage Order No. 4-2001").

has rejected the argument that an employee must work "at the level of management policy or general operations" to satisfy the qualitative element of the "directly related" standard. *See Bucklin v. Am. Zurich Ins. Co.*, 2013 U.S. Dist. LEXIS 86342, at \*24–\*26 (holding that nothing in the text of 29 C.F.R. § 541.205 establishes that activities must occur at the level of management or general operations and rejecting the "contrived requirement" otherwise). Accordingly, the Court rejects Plaintiff's argument that the "directly related" requirement is not met because his job was task-based and part of the day-to-day operation of Defendant's business.

Plaintiff's work also meets the quantitative prong of the standard because it was of substantial importance to the operations of Defendant and its customers. Plaintiff represented Defendant and its policyholders in serious matters involving "claimants who had suffered workplace fatalities" and "seriously disabling [sic] injuries," including some instances in which "hundreds of thousands of dollars was at issue [sic]." (Noriega Decl. ¶ 6.) Plaintiff argues that Defendant has not made a showing that his work was sufficiently important to Defendant to meet the quantitative aspect of the "directly related" prong because some of the claims involved less serious injuries and his decisions were subject to approval from a claims adjuster. But these arguments are insufficient to withstand summary judgment because Plaintiff presents no evidence contradicting Litigation Manager Noriega's statement and reasoning that his work *was* of substantial importance to Defendant. (*See* Noriega Decl. ¶ 6.) Further, simply because Plaintiff's decisions and recommendations were reviewed by others does not lead to the conclusion that his work lacked the requisite importance. As mentioned above, Plaintiff acted as a legal representative capable in some instances of binding Defendant to settlements he negotiated. (Gallardo Dep. 85:6–12.) He also stated at deposition that he believed his work was important to Defendant:

///

Q.    Do you think your role was important?

A.    Yes, I would like to think so.

. . . . .

Q.    In terms of impact on the company, would you agree that what you

chose to do in those hearings or appearances in turn would impact the

company based on how you might have – what you agreed the company

would do?

A.    Well, yeah.  I – it's possible, yes.

(Gallardo Dep. 126:22–127:9.)  Defendant has established that both the qualitative and

quantitative prongs of the "directly related" standard are met.

### 2.  Plaintiff customarily and regularly exercised discretion and independent judgment.

The second element of the administrative exemption test requires that the

employee "customarily and regularly exercises discretion and independent judgment."  8

C.C.R. § 11040(1)(A)(2)(b).  "In general, the exercise of discretion and independent

judgment involves the comparison and the evaluation of possible courses of conduct and

acting or making a decision after the various possibilities have been considered."  29

C.F.R. § 541.207(a) (2000).  The phrase "implies that the person has the authority or

power to make an independent choice, free from immediate direction or supervision and

with respect to matters of significance."  *Id.*  However, it "does not necessarily imply that

the decisions made by the employee must have a finality that goes with unlimited

authority and a complete absence of review."  29 C.F.R. § 541.207(e)(1) (2000).

Decisions may consist of recommendations, and "[t]he fact that an employee's decision

may be subject to review and that upon occasion the decisions are revised or reversed

after review does not mean that the employee is not exercising discretion and

independent judgment . . ." *Id.* Judgment must be exercised as to "matters of significance," not merely as to "relatively unimportant matters." 29 C.F.R. § 541.207(a), (d)(1) (2000).

Defendant contends that Plaintiff's work involved discretion and independent judgment because for each task he completed, Plaintiff "considered a variety of information and factors, weighed them, and made decisions or recommendations based on what he identified as the best course of action." (Def.'s Mot. at 14.) The Court agrees. Plaintiff testified at deposition that problem solving was a "big part" of his job and that he was required to use "good logic skills" in performing his tasks. (Reply Statement at 15, ¶20.) Although his decisions often amounted to recommendations made to a claims adjuster, Plaintiff was required to exercise his own judgment in developing those recommendations:

> Q.   And you would use your skills in terms of your knowledge of Workers' Compensation, potential liability, and what the likelihood was that there would be some sort of an adverse result at the end of the Workers' Compensation process to frame your recommendations and your suggestions to the adjuster, correct?
>
> A.   Correct.

(Gallardo Dep. 94:23–95:5.) While attending WCAB proceedings and conducting depositions, Plaintiff had to independently react to issues and circumstances that arose. He made decisions about how best to respond to questions posed by a judge, (Gallardo Dep. 194:12–17), decided how to present issues when there was a dispute at a hearing, (Gallardo Dep. 196:6–10), and responded to objections and legal issues raised by opposing counsel at depositions, (Gallardo Dep. 38:18–39:6). All of these tasks required Plaintiff to evaluate possible courses of conduct and make an independent choice or

1  decision after considering the various possibilities.  Even to the extent Plaintiff's
2  judgment was only used to make a recommendation to a superior, "[t]he decisions made
3  as a result of the exercise of discretion may consist of recommendations for action rather
4  than the actual taking of action."  29 C.F.R. § 541.207(e)(1) (2000); *see also Bucklin*,
5  2013 U.S. Dist. LEXIS 86342, at *51 ("Plaintiffs were expected to offer a reasoned
6  recommendation for the action, which was accepted the vast majority of the time  . . . .
7  These recommendations show that Plaintiffs exercised discretion and independent
8  judgment.").
9
10        Plaintiff argues that he lacked discretion and his work was insignificant because
11  WCAB proceedings are "far removed from the significance of legal proceedings in a
12  court of law" and that he merely applied his knowledge to follow prescribed procedures
13  and standards and WCAB protocol.  (Pl.'s Opp'n at 22.)  While it is true that Defendant
14  had regulations and guidelines providing procedures, rules, and preformatted templates,
15  (*see* Bhowmik Decl. Exh. 3 ["Standard Operating Procedures"]), those procedures only
16  guided Plaintiff's decision-making to the extent they specified routine matters such as
17  various administrative processes and the format and content guidelines for reports.
18  Defendant's procedures did not direct him how to negotiate a settlement in a particular
19  case, evaluate a witness's credibility at deposition, or respond to a specific question from
20  a judge or objection from opposing counsel.  Accordingly, the procedures Plaintiff
21  followed did not divest him of the exercise of independent judgment.  *See In re United*
22  *Parcel Serv. Wage & Hour Cases*, 190 Cal. App. 4th at 1026 ("While we agree an
23  employee constrained by stringent protocols mandating a particular outcome to routine
24  tasks would not be exercising discretion . . . merely because an employer requires
25  adherence to regulations, guidelines or procedures does not mean an executive does not
26  exercise discretion or judgment.  The modern workplace is a regulated workplace . . .").[12]
27  ────────────────
28  [12]  Additionally, to the extent Plaintiff argues that his work is insignificant because WCAB proceedings
    are often "so small as not to justify the engagement or service of a member of the bar," *In re Escamilla*,

1    Plaintiff also argues that his work was similar to that of a paralegal, and that the

2    Department of Labor ("DOL") has issued several opinion letters holding that paralegals

3    do not meet the administrative exemption.  (*See* Pl.'s Request for Judicial Notice ["Pl.'s

4    RJN"] Exhs. 1, 2.)[13]  But the evidence is undisputed that Plaintiff acted as much more

5    than a paralegal.  Albeit within the authority granted to him by a claims adjuster, Plaintiff

6    represented Defendant and its policyholders before the WCAB, participated in settlement

7    negotiations with opposing counsel, conducted depositions, provided impressions of the

8    credibility of deponents and their likely competency as witnesses, and provided a wide

9    range of recommendations for "next steps"  based upon his training and experience.  His

10   job duties were much different from the paralegal duties identified in the DOL opinion

11   letters he relies upon, which include tasks such as maintaining files, summarizing

12   depositions, copying cases, performing research under the supervision of lawyers,

13   drafting basic discovery requests, and preparing legal memoranda for attorneys.  (Pl.'s

14   RJN Exh. 1 at 1; Exh. 2 at 1.)  Importantly, the California Supreme Court has held that

15   individuals practicing before the Industrial Accident Commission, the WCAB's

16   predecessor, "perform[] legal services and such services are the services of an 'attorney'

17   . . . ."  *Eagle Indem. Co. v. Indus. Acc. Comm'n of Cal.*, 217 Cal. 244, 248 (1933); *see*

18   *also Longval v. Workers' Comp. Appeals Bd.*, 51 Cal. App. 4th 792, 798 (1996)

19   ("Although as a general rule no one may practice law without a license, the Legislature

20   may create exceptions to the rule . . . .  The Supreme Court determined the Legislature

21   had created such an exception for lay persons to practice law in representing workers

22

23   78 Cal. Comp. Cases 134, 143 (Cal. W.C.A.B. 2013), this argument is unpersuasive.  The undisputed
24   evidence shows the Hearing Representatives represent Defendant and its policyholders in various
     proceedings relevant to the outcome of a case, including mandatory settlement conferences and trials.
25   (Reply Statement at 66, ¶ 72.)  While it may be true that comparatively, these proceedings are less
     significant than commercial bet-the-company litigation, this point is irrelevant as it is undisputed that
26   Plaintiff's services were of importance to Defendant's business.  (*See* Noriega Decl. ¶ 6.)
27   [13]   The Court takes judicial notice of the DOL opinion letters presented by Plaintiff.  *See Louis v.
     McCormick & Schmick Restaurant Corp.*, 460 F. Supp. 2d 1153, 1155 n.4 (C.D. Cal. 2006) (taking
28   judicial notice of "various opinion letters issued by federal and state regulatory agencies" under Federal
     Rule of Evidence 201).

before the WCAB.").  In sum, Plaintiff performed work of substantial importance beyond the work of an ordinary paralegal.  He exercised discretion and independent judgment in the course of representing Defendant and its policyholders and by making informed recommendations to claims adjusters.

### 3. Plaintiff performed only under general supervision work along specialized or technical lines, requiring special training, experience, or knowledge or executed only under general supervision special assignments and tasks.

The administrative exemption is applicable to an employee "who performs only under general supervision work along specialized or technical lines requiring training, experience or knowledge" or "[w]ho executes under only general supervision special assignments and tasks."  8 C.C.R. § 11040(1)(A)(2)(d), (e).  Here, it is undisputed that Plaintiff's work required "training, experience or knowledge."  Plaintiff testified at deposition that his job required him to have legal and medical knowledge and background.  (Gallardo Dep. 196:1–5.)  Plaintiff also relied on his ten years of workers' compensation experience and his training "to give [him] some background and knowledge and skill to do [his] hearing representative job."  (Gallardo Dep. 26:17–25.)  Indeed, "Plaintiff does not dispute that his position requires the exercise of specific skills and knowledge."  (Pl.'s Opp'n at 23.)

However, the parties do disagree over whether Plaintiff performed his work only under "general supervision."  Defendant argues that this requirement is met because Plaintiff worked the majority of the time away from the office and had no direct supervision with respect to preparing for matters, appearing at hearings, or conducting depositions.  Plaintiff disagrees, contending that he needed "approval for virtually every task he perform[ed]" and that the job description for the Hearing Representative position states that employees in the position receive "moderate supervision."  (Pl.'s Opp'n at 23–

24.)  He argues that he independently wrote reports, but that the reports were written in accordance with the preformatted templates provided to him and that each report was sent to the claims adjuster and litigation manager for review to determine adherence to quality, content, and format protocol.  (Pl.'s Opp'n at 24.)

Plaintiff's arguments are insufficient to withstand summary judgment in light of the undisputed evidence.  The facts show that Plaintiff did spend most of his time working independently outside of the office.  Moreover, his supervising litigation manager had "very little day-to-day oversight over the manner in which he performed his job duties." (Noriega Decl. ¶ 8.)  Plaintiff appeared independently at hearings and depositions, and while his authority to act was limited to what was approved by a claims adjuster, Plaintiff agrees that he had to use "brain power" and that an adjuster was not "speaking into [his] ear" as he made his arguments.  (Gallardo Dep. 195:17–25.)  Plaintiff was the individual deciding how to present issues he was arguing at hearings, and determining how to ask and frame questions at depositions.  (Gallardo Dep. 196:6–15.)  He further independently wrote his reports and made recommendations, although it is true that those reports and recommendations were ultimately subject to review.

Defendant's classification of the Hearing Representative job as receiving "moderate supervision" is not dispositive and does not create a triable issue of fact.  "Moderate supervision" as defined in the Job Description means that "[i]ncumbents have *freedom to act* once objectives are set and have the *latitude to select methods or approaches* based on established policies, procedures and precedents."  (emphasis added.)  This language indicates that the Hearing Representative position allows for greater independence than Plaintiff suggests.  Collectively, the evidence shows that within the parameters of Defendant's protocol and the authority granted to him by claims adjusters, Plaintiff performed his job tasks in a generally autonomous manner and under only general supervision.

**4.  Plaintiff was primarily engaged in exempt duties and earned at least twice the minimum wage.**

Defendant has established both that Plaintiff was primarily engaged in exempt duties and that he earned at least twice the minimum wage.  Plaintiff does not dispute that he spent approximately 70% of his working time appearing at status conferences, mandatory settlement conferences, trials, and arbitration hearings, and providing recommendations to claims examiners for follow up or necessary claims handling. (Reply Statement at 13, ¶ 18.)   Further, Plaintiff utilized an assistant to file documents, (Gallardo Dep. 51:17–22), used a dictation service to prepare his reports, (Gallardo Dep. 138:17–139:2), and spent only about one hour a month compiling his billing records, (Gallardo Dep. 103:21–105:2).  Finally, Plaintiff does not dispute that the salary requirement of the administrative exemption is met.  As a Hearing Representative, he made a base salary of at least $74,000, which is at least twice the minimum wage.  (Reply Statement at 6, ¶ 8.)  Defendant has established that Plaintiff falls within the administrative exemption as a matter of law and is accordingly entitled to summary judgment as to all of Plaintiff's claims.

**CONCLUSION**

For the foregoing reasons, Defendant's motion is **GRANTED**.

DATED:     July 24, 2013

_____

CORMAC J. CARNEY

UNITED STATES DISTRICT JUDGE

-26-

**<u>EXHIBIT #2</u>**

1   BLUMENTHAL, NORDREHAUG & BHOWMIK
      Norman B. Blumenthal (State Bar #068687)
2     Kyle R. Nordrehaug (State Bar #205975)
      Aparajit Bhowmik (State Bar #248066)
3   2255 Calle Clara
    La Jolla, CA 92037
4   Telephone: (858)551-1223
    Facsimile: (858) 551-1232
5   Firmsite: www.bamlawca.com

6   Attorneys for Plaintiff / Appellant

7

8

9

10

11              **UNITED STATES COURT OF APPEALS**

12                  **FOR THE NINTH CIRCUIT**

13

14  FRANK GALLARDO, an individual,          Case No. _____
    on behalf of himself, and on behalf of
15  all persons similarly situated,
                                            **REPRESENTATION STATEMENT**
16              Plaintiff / Appellant,

17  v.                                      D.C. # **SACV-12-1107-CJC (AN)**

18  AIG DOMESTIC CLAIMS, INC., a
    Delaware Corporation; CHARTIS
19  CLAIMS, INC., a Delaware
    Corporation; and DOES 1 to 10,
20  Inclusive,

21              Defendants / Appellees.

22

23

24

25

26      The undersigned represents Plaintiff / Appellant Frank Gallardo, appellant in

27  this matter and no other party.  Listed below is a service list that shows all of the

28  _____
                            1
                REPRESENTATION STATEMENT

parties to the action below, and identifies their counsel by name, firm, address, and telephone number, where appropriate (F.R.A.P. 12(b); Circuit Rule 3-2(b).)

Dated: August 5, 2013               BLUMENTHAL, NORDREHAUG & BHOWMIK

By:   */s/ Norman B. Blumenthal*
      Norman B. Blumenthal, Esq.
      2255 Calle Clara
      La Jolla, CA 92037
      (858) 551-1223
      Fax: (858) 551-1232
      Email: Norm@bamlawca.com

## SERVICE LIST:

Elena R. Baca (SB # 160564)
email: elenabaca@paulhastings.com
Ryan D. Derry (SB# 244337)
email: ryanderry@paulhastings.com
PAUL HASTINGS LLP
515 South Flower Street, 25th Floor
Los Angeles, California 90071-2228
Telephone: (213) 683-6000
Facsimile: (213) 627-0705

*Attorneys for Defendants / Appellees*
*AIG DOMESTIC CLAIMS, INC. and CHARTIS CLAIMS, INC.*


NORMAN B. BLUMENTHAL, Esq.,  State Bar No. 068687
norm@bamlawca.com
KYLE R. NORDREHAUG, Esq.,  State Bar No. 205975
kyle@bamlawca.com
BLUMENTHAL, NORDREHAUG & BHOWMIK
2255 Calle Clara
La Jolla, CA 92037
Telephone: (858)551-1223
Facsimile: (858) 551-1232
*Attorneys for Plaintiff/Appellant Frank Gallardo*

REPRESENTATION STATEMENT